JAMES ERNST AND JOYCE ERNST *v.* LEONARD V. SPARACINO

[No. 3-1176A263. Filed September 28, 1978.]

---

1. IC 1971, 35-24.1-2-8(c)(9) (Burns Code Ed.) now IC 1971, 35-48-2-8(c)(9) (Burns Code Ed.).

*Albert C. Hand, Hand, Muenich & Rodovich*, of Hammond, for appellants.

*Ronald T. Spangler, David L. Abel II, Spangler, Jennings, Spangler & Dougherty,* of Crown Point, for appellee.

STATON, J. — An automobile collision occurred when James Ernst was about to turn left at an intersection. His automobile was struck at the rear by Leonard V. Sparacino. James Ernst brought this action for damages. After a jury trial, a verdict was returned for Leonard V. Sparacino. James Ernst brings this appeal from the trial court's judgment on the verdict, and he raises these issues for our review:

(1) Was the verdict contrary to law and unsupported by the evidence?

(2) Did the court err in refusing certain instructions tendered by Ernst?

(3) Did the court err in giving certain instructions tendered by Sparacino?

(4) Did the court err in admitting certain evidence?

(5) Did cumulative errors committed by the trial court prejudice Ernst?

After examining the above issues, we conclude that there were no reversible errors, and we affirm.

## I.

### Contrary to Law

Ernst is appealing from a negative judgment. We cannot consider his argument that the verdict is unsupported by the evidence. *Hiatt v. Yergin* (1972), 152 Ind.App. 497, 284 N.E.2d 834. The standard of review, when a party appeals a negative judgment, is absolute: only when the evidence is *without conflict* and leads to but *one conclusion* and the fact-finder reached a *contrary conclusion* will the decision be disturbed as contrary to law. *Columbia Realty Corporation v. Harrelson* (1973), 155 Ind.App. 604, 293 N.E.2d 804; *Yellow Manufacturing Acceptance Corp. v. Voss* (1973), 158 Ind.App. 478, 303 N.E.2d 281; *Senst v. Bradley* (1971), 150 Ind.App. 113, 275 N.E.2d 573; *Shoemaker v. Bowman* (1977), 173 Ind.App. 392, 363 N.E.2d 1278; *Celanese Coating Company v. Blakemore* (1975), 163 Ind.App. 433, 324 N.E.2d 268; *Plumley v. Stanelle* (1974), 160 Ind.App. 271, 311 N.E.2d 626.

The evidence was conflicting. Ernst was driving south on a two-way street. He maintains that he signalled to make a left turn and had slowed to execute that turn. Sparacino testified that he would have seen a signal had it been used and that he saw no signal. Sparacino had noticed the decreasing speed of Ernst's vehicle and was starting to pass Ernst's vehicle on the left when the collision occurred.

The existence or non-existence of the visible turn signal was crucial to the factual determination of negligence. Since the evidence was in direct conflict, we need not further examine whether only one conclusion was justified. This Court will not weigh evidence or examine reasonable inferences to be drawn from evidence. Ernst has failed to demonstrate that the verdict of the jury was contrary to law.

## II.

### Ernst's Tendered Instructions

Two of Ernst's tendered instructions were refused by the trial court. The instructions related to the doctrine of last clear chance and following too closely. The Indiana Supreme Court has set out a three-part test for ascertaining whether error results from the refusal of a tendered instruction.

"In considering whether any error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction correctly states the law, *Gayer v. State*, (1965) 247 Ind. 113, 210 N.E.2d 852; (2) whether there is evidence in the record to support the giving of the instruction, *Wathen v. State*, (1965) 246 Ind. 245, 204 N.E.2d 526; (3) whether the substance of the tendered instruction is covered by other instructions which are given, *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770; *New v. State*, (1970) 254 Ind. 307, 259 N.E.2d 696; *Cockrum v. State*, (1968) 250 Ind. 366, 234 N.E.2d 479."

*Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836, 838.

Ernst's Instruction number 8 and Instruction number 9 were refused. Ernst objected to the trial court's refusal of these tendered instructions, but did not present his verbatim objections in the argument section of his appellate brief (as is required by Ind. Rules of Procedure, Appellate Rule 8.3[A]). Sparacino argues that Ernst has thereby waived the issue.

We cannot treat the issue as waived because of the combined effect of two recent appellate level judicial decisions.

In a per curiam opinion, the Indiana Supreme Court held that even though an appellate brief fails to set forth the verbatim objections to instructions, substantial compliance with the rule can be achieved via paraphrasing the objection in the argument section of the brief. The Court stated that if the brief "is of sufficient cogency that it can be responded to by appellees without undue hardship or extraordinary expense, . . . dismissal is not warranted on that basis." *Dahlberg v. Ogle* (1977), 266 Ind. 524, 364 N.E.2d 1174, 1175. Though *Dahlberg* addressed itself to the dismissal of an appeal, the same rationale is applicable to a waiver analysis.

In addition, the Indiana Court of Appeals has interpreted TR. 51(C) to mean that the tendering of an instruction automatically gives the tendering party an exception if the instruction is refused. *State Farm Mut. Auto. Ins. Co. v. Shuman* (1977), 175 Ind.App. 186, 370 N.E.2d 941. It is axiomatic that if a party need not explicitly object to the refusal of a tendered instruction, the failure to set out a verbatim objection in a brief would not constitute a waiver. Therefore, we will consider the merits of the instructions issues.

## A.  Last Clear Chance

Ernst's Instruction number 8 referred to the last clear chance doctrine. That instruction is as follows:

### "PLAINTIFFS' INSTRUCTION NO. 8

"Ordinarily any negligence on the part of the plaintiff which contributes to his own injury and/or damages, will be a complete defense when he sues a defendant for injuries and/or damages to his person or property.

"However, there is one exception to this rule known as the Last Clear Chance Doctrine in which the plaintiff's original negligence is excused or is held not to be the proximate cause of the plaintiff's injuries and/or damages. The elements of a situation to which this doctrine applies are:

"First:    Both plaintiff and defendant are negligent;

"Second:    Plaintiff is in a position of peril from which he cannot extricate himself;

"Third: Thereafter, the defendant discovers or becomes aware of the plaintiff's position of peril, and has the time and means to avoid the injury or damage but negligently fails to exercise ordinary care to do so; and

"Fourth: Which failure proximately results in injury and/or damage to plaintiff's person or property.

"If you find from a consideration of all the evidence that these elements have been proved, then the plaintiff's original negligence will not defeat a recovery."

The instruction was properly refused.

First, it does not correctly state the law. Error cannot be predicated on the refusal of a tendered instruction which incorrectly states the law. *LaDuron v. State* (1973), 157 Ind.App. 189, 299 N.E.2d 227. Judge Hoffman emphasized in *National City Lines, Inc. v. Hurst* (1969), 145 Ind.App. 278, 250 N.E.2d 507, that "[t]he limits of the [last clear chance] doctrine are narrow, and this is as it should be." The application of the doctrine is limited in scope to those situations evidencing the following set of facts:

"1) The defendant had actual knowledge of the plaintiff; 2) The defendant knew of the plaintiff's perilous position; 3) The defendant had physical control over the instrumentality and had the last opportunity through the exercise of reasonable care to avoid the injury; and 4) The plaintiff was oblivious to his own danger, notwithstanding his own contributory negligence." (Citations omitted.)

*National City Lines, Inc. v. Hurst, supra,* at 510. Ernst's Instruction number 8 does not refer in any way to element (4), that plaintiff was oblivious to his own danger. And, the instruction as a whole evidences a completely different tenor from that approved in *National City Lines, Inc. v. Hurst, supra.*

We conclude that the instruction was properly refused for a second reason. Evidence was not presented to support the giving of the instruction. Even if we are to presume Ernst's negligence in failing to signal (and Ernst maintained throughout the trial that he *did* signal), we are faced with the fact that Ernst recognized his own peril and had at least an equal, if not greater, opportunity to prevent the accident. Ernst testified that on several occasions, "constantly," he looked back in the rearview mirror and saw Sparacino approaching, and

he "could tell the gap was closing between" the cars. This statement patently recognizes the fact that Sparacino was not slowing in response to Ernst's indication that he was going to make a turn. Ernst cannot construe the evidence both ways for the same instruction. If he admits his negligence in not signalling, and he knew the gap was closing, then he should have had no expectation that Sparacino would be prepared for a left turn. On the other hand, if Ernst maintains that he did signal, then the crucial requirement of mutual negligence was not met. The trial court was not bound to instruct the jury on a matter which had not been placed in evidence in the case. *Martin v. State* (1973), 260 Ind. 490, 296 N.E.2d 793.

Ernst's Instruction number 8 was properly refused because the instruction did not correctly state the law, and the necessary factual elements for reliance on the last clear chance doctrine were not presented.

*B. Following Too Closely*

Ernst tendered Instruction number 9(e) which was refused:

## "PLAINTIFFS' INSTRUCTION NO. 9

"You are instructed that at all times complained of in the plaintiffs' complaint there were statutes of the State of Indiana in full force and effect, which provided in part as follows:

(Here Insert)

"If you find from a preponderance of the evidence that the defendant violated any of the applicable Statutes covered by these instructions, on the occasion in question, such conduct would constitute negligence on the part of the defendant and you should find for the plaintiffs."

[Here Insert]:

"e

"9-4-1-73 (47-2019) Following too closely. — (a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles, the time interval between vehicles, and the condition of the highway. . . ."

This instruction was properly refused because no evidence was in the

record to support its submission to the jury.[1] *Martin v. State, supra.* Ernst testified that as of "50 to a hundred feet area north of the intersection" where the crash occurred, Sparacino was "two, two and a half blocks" behind him. Ernst estimated that a block was about "300, 350 feet." This means that at the time immediately preceding the accident Sparacino was at least 600 feet behind Ernst. Ernst stated that he slowed to 10 to 15 miles an hour before he made his turn. He also stated that the gap between the cars started closing. Sparacino's account of the accident was consistent in that he stated that he noticed the Ernst car "was going slower," and he "proceeded to go around, proceeded to pass." The main evidence in conflict was whether Ernst had signalled for his left turn or applied brakes in front of Sparacino. The impact of the cars occurred in the northbound lane. No evidence of *following too closely* was presented.

We believe that incorporating general and abstract statutory language into an instruction without any correct statement of application would have been error. *See Board of Commissioners of Miami County v. Klepinger* (1971), 149 Ind.App. 377, 273 N.E.2d 109. The judge correctly refused the instruction.

"Misapplication of statutes is an unavoidable hazard for lawyers and courts alike. It is a hazard that should not be introduced into a jury trial by instructions. *This is especially true where the statute has only a remote relevance to the issues and the evidence.*" (Emphasis added.)

*Id.* at 115. In addition, the instruction is an incomplete statement of the law because it lacked reference to proximate causation. Even negligence per se must be the proximate cause to be actionable. *See Kiste v. Red Cab* (1952), 122 Ind.App. 587, 106 N.E.2d 395. There was no error in refusing Ernsts' tendered Instruction number 9(e).

## III.

### Instructions Given

Ernst objected at trial to certain instructions tendered by Sparacino.

---

1. We address the merits even though Ernst waived the issue by failing to raise the issue in his Motion to Correct Errors.

The court overruled the objections, and the instructions were read to the jury. Ernst now argues that the giving of those instructions constituted reversible error. In addition to the *Davis v. State, supra,* considerations, we shall employ the test described in *Rondinelli v. Bowden* (1973), 155 Ind.App. 582, 293 N.E.2d 812: was the jury misled?

### A. *"Unavoidable Accident"*

Ernst maintains that Sparacino's tendered Instruction number 8 was an unavoidable accident instruction, and, as such, should not have been permitted in Indiana.

### "INSTRUCTION NO. 8

"If you find from a fair preponderance of the evidence that the defendant exercised all the attention and care in driving his vehicle, at the time and place in question, that you consider reasonably necessary under all the circumstances; and, if you find that the defendant was not guilty of any wrongful act or omission of duty and that the damages claimed by the plaintiff were done unavoidably and under the circumstances which the defendant could not control or avoid, then, under the laws of this State, the plaintiff is not entitled to recover any damages against the defendant and your verdict should accordingly be for the defendant, for if there is no negligence on the part of the person charged therewith, another cannot recover damages against such person, even though the party suing may have been damaged."

"Unavoidable accident" or "pure accident" instructions have been disapproved in Indiana. *See Miller v. Alvey* (1965), 246 Ind. 560, 207 N.E.2d 633, and cases cited therein. The basis for the disapproval is that such instructions can be ambiguous and confusing to lay jurors. However, Sparacino's instruction was patterned after an instruction which was specifically approved in *Adkins v. Elvard* (1973), 155 Ind.App. 672, 294 N.E.2d 160.

The First District, Indiana Court of Appeals, distinguished the instructions from a "mere accident" instruction:

"The instruction does not use the phrases 'mere accident', 'unavoidable accident', or 'pure accident', nor are we persuaded that the language directly or indirectly conveyed a mere accident situation to the jury. A 'mere or pure accident' situation is one *where no one is at fault* while the instruction in question deals solely with

the issue of whether a party can recover damages *from another party* who was not at fault. . . ." (Emphasis added.)

*Adkins v. Elvard, supra,* at 164.

We agree with the *Adkins* decision. The instruction correctly describes the burden of proof for negligence, and we do not believe that the jury was misled. The instruction clearly limits its application to the question of whether the *defendant* could have controlled or avoided the circumstances causing the accident. It does not imply that the accident was unavoidable. The instruction was properly given.

*B. Lookout*

Ernst and Sparacino each tendered instructions on lookout. The trial court gave both instructions. Ernst argues that the two instructions were contradictory and thus served to confuse the jury; the confusion resulted, he states, from the fact that Sparacino's lookout instruction was an incorrect statement of the law.

Ernst proffered the following:

"PLAINTIFFS' INSTRUCTION NO. 13

Under the law of Indiana at the time and place of the accident in question, the defendant was required to exercise that degree of care to keep a lookout ahead of him for other vehicles or pedestrians upon the highway, which a reasonable and prudent person would exercise under the same or similar circumstances."

Sparacino's lookout instruction added another consideration:

"INSTRUCTION NO. 3

The Court instructs you that the driver of an automobile *does not owe a duty to keep a constant lookout ahead* but is only required to use, in the matter of lookout, the care which an ordinarily prudent person would exercise in like circumstances." (Emphasis added.)

Sparacino argues that Ernst's entire thesis regarding the issue of lookout should be ignored since Ernst failed to preserve any error within his Motion to Correct Errors and also failed to utilize cogent argument and relevant authority in his appellate brief. *See* TR. 59(B) and AP. 8.3(A)(7). We agree that Ernst has waived any alleged error.

Additionally, though, we would note that the two instructions are not necessarily contradictory. Rather, Ernst's instruction was arguably incomplete in that it failed to fully define the extent of the lookout "which a reasonable and prudent person would exercise." Sparacino's instruction narrows the scope somewhat by stating that the lookout need not be *constant.* Sparacino was entitled to tender an instruction which completed another tendered instruction. *McClure v. Miller* (1951), 229 Ind. 422, 98 N.E.2d 498. The court had no *duty* to repeat both instructions since they had similar meanings. *Bonek v. Plain* (1972), 153 Ind.App. 516, 288 N.E.2d 185. But, repetition of instructions is reversible error only when it amounts to an argument by the court of one particular phase of the case. *Pfeifer v. State* (1972), 152 Ind.App. 315, 283 N.E.2d 567. Since focusing upon *Sparacino's duty* to look out ahead of him should not have prejudiced Ernst (and we have been shown no prejudice), the reading of the similar instructions was not reversible error.

Moreover, Sparacino's instruction represented his theory of the case, and he had presented evidence regarding the extent of lookout that he had employed (he testified that he watched the highway and noticed Ernst's car, but he did not swear that his lookout was absolutely uninterrupted). *See Rentschler v. Hall* (1946), 117 Ind.App. 255, 69 N.E.2d 619. Like the Indiana Supreme Court in *Pfisterer v. Key* (1941), 218 Ind. 521, 33 N.E.2d 330, we believe that Sparacino's use of the word "constant," undefined, provided little guidance for the jury; therefore, we do not approve the instruction for future use. However, Ernst could have tendered a definition of the term, or he could have offered a modification of Sparacino's instruction which would have narrowed its meaning. *Mireles v. State* (1973), 261 Ind. 64, 300 N.E.2d 350. The law does require a regular attention to the highway, but only a reasonable regularity. The two instructions can be interpreted as consistent.

Finally, as we stated in *Board of Commissioners of Miami County v. Klepinger* (1971), 149 Ind.App. 377, 386, 273 N.E.2d 109, 115:

" 'Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an over emphasis placed upon the wording and refined meaning of instructions which far exceed their actual effect upon the jury.' "

The giving of two slightly different lookout instructions was not error.

## IV.

### Impeachment Evidence

At trial, Ernst testified that as a result of the accident he had had to secure the services of another individual to assist him in performing his duties as a merchant policeman. He stated that as of the date of trial, the man had not been paid. Sparacino then introduced, over objection, a letter written by Ernst's attorney to Sparacino's insurance company. In the letter, Ernst, through his attorney, stated that he had already paid out a sum for hiring help. The letter was offered (and accepted) for impeachment purposes only, and the addressee (the insurance company) was excluded.

Ernst's arguments relating to the admission into evidence of the letter are conflicting. On the one hand, he states that the letter should have been excluded because it was part of a negotiation and settlement between the parties, and on the other hand, he posits that it was improperly admitted because the addressee was missing. Neither position has merit. The letter was offered only for impeachment purposes, and nothing in the letter alluded to a compromise or settlement. It was properly admitted.

In addition, Ernst arguably waived any real error because he failed to include the letter or his specific objections thereto in either his Motion to Correct Errors or his brief on appeal. Furthermore, he did not attempt to introduce the addressee of the letter at trial, though he could have done so. (However, it is apparent that the addressee would not have explained or modified the body of the letter, since the letter was offered only to impeach Ernst's trial testimony regarding payments for hired help.)

Ernst's appellate argument is devoid of cogency and cites no relevant authority. And, he has not demonstrated specifically how he was prejudiced by the admission of the letter. *Marsh v. Lesh* (1975), 164 Ind.App. 67, 326 N.E.2d 626. We have been shown no reversible error.

## V.

### Conclusion

We have addressed all of Ernst's arguments on their merits, even

though Sparacino was in some instances correct when he asserted that error was waived by Ernst. We conclude that Ernst was not denied a fair trial. In all cases appealed to this Court, there is a presumption that the trial court correctly decided the questions presented. It is incumbent upon the appellant to rebut this presumption in his brief by clearly showing that the trial court committed serious error which denied him the relief to which he was entitled under law. *Kuykendall v. County Com'rs of Marion County* (1968), 142 Ind.App. 363, 234 N.E.2d 860. Ernst has failed to rebut the presumption.

Affirmed.

Buchanan, C.J. (by designation), concurs;

Garrard, P.J., concurs in result.

NOTE—Reported at 380 N.E.2d 1271.